# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| JOEL D. MALLORY, JR., | § | CIVIL ACTION H-10-1592 |
| | § | BANK. ACTION 07-30383 |
| *Debtor.* | § | |

## MEMORANDUM AND ORDER

Pending before the court is appellant Joel D. Mallory, Jr.'s appellant brief (Dkt. 9), which seeks a reversal of the bankruptcy court's dismissal of Mallory's bankruptcy case with prejudice, and JPMorgan Chase Bank's motion to lift the stay prohibiting the foreclosure of appellant's primary residence (Dkt. 20). Having considered the arguments in the appellant brief and well as the response, reply, and applicable law, the court is of the opinion that the bankruptcy judge's dismissal of Mallory's case should be AFFIRMED, that the stay should be LIFTED, and that JPMorgan Chase Bank's motion should be DENIED AS MOOT.

## I. BACKGROUND

Appellant Joel D. Mallory appeals the bankruptcy court's dismissal of his bankruptcy case with prejudice. In the proceeding below, the Chapter 13 Trustee, William E. Heitkamp ("Trustee") moved to dismiss the bankruptcy because (1) Mallory failed to implement a wage deduction order or ACH authorization as required by Bankruptcy Local Rule 4001(e) and paragraph 2(F) of the bankruptcy court's Chapter Thirteen Bankruptcy procedures; (2) Mallory did not provide the Trustee with information relating to his domestic support obligation as required by 11 U.S.C. § 1302(d); (3) payments due to the Trustee pursuant to 11 U.S.C. § 1326(a)(1) and 1325(a)(2) had not been made;

and (4) Mallory caused unreasonable delay that was prejudicial to his creditors.[1]  B.R. Dkt. 198.[2]

Mallory filed an objection to the dismissal, claiming that he failed to make payments to the Trustee

because the Trustee was making mortgage payments to various entities even though there was no

established chain of title to the note.  B.R. Dkt. 206.  Mallory claims that he attempted to contact the

Trustee's office about his concerns, but the Trustee told him that "nothing [could] be done to resolve

the matter without a hearing."  *Id.*

The bankruptcy court held a hearing on the Trustee's motion to dismiss the case on April 20,

2010.  During the hearing, the Trustee noted that Mallory had not made a payment to the Trustee for

3 ½ months.  B.R. Dkt. 225 (hearing transcript).  Mallory disputed the grounds for dismissal listed

in the Trustee's motion, asserting that (1) he had not provided the ACH authorizations because JP

Morgan had recently closed his personal bank account and he was in the process of getting another

one; (2) he could get the Trustee whatever information he needed about the domestic support

obligation; and (3) he believed that a plan amendment would take care of the issue with the

delinquent payments to the Trustee, which he noted were balloon payments.[3]  *Id.*  When the

bankruptcy judge inquired specifically about the delinquent payments, Mallory acknowledged that

the amount was "in accordance to the plan, which has not been amended."  *Id.*  Mallory stated that

---

[1]  The Trustee also indicated that the Chapter 13 Plan needed to be amended to provide for payment in full of the secured and priority claims within the term of the plan, but it is unclear how this relates to its motion to dismiss.  *See* B.R. Dkt. 198 at 1 (representing the foregoing as a reason for dismissal).

[2]  The abbreviation "B.R. Dkt." refers to the bankruptcy court docket in bankruptcy action number 07-30383.

[3]  Mallory's plan was never confirmed, so the "plan" referred to in this order is a post-petition, pre-confirmation plan.

he was sure he could work something out with the Trustee.  After listening to the arguments, the bankruptcy judge dismissed the case with prejudice.[4]  *Id.*

The bankruptcy judge followed her oral ruling with a written order granting the Trustee's motion and a written order dismissing the case with prejudice.  B.R. Dkts. 207, 209.  Mallory filed a motion for reconsideration, in which he argued that the dismissal with prejudice was a "drastic remedy which should only be used in extreme circumstances" and that there was "no proof of egregious conduct" in his case.   B.R. Dkt. 208.  Mallory also pointed out that the Trustee had not requested dismissal with prejudice.  *Id.*  Mallory asserted that the court dismissed the case with prejudice due to the adversary proceeding and the motion to withdraw counsel. *Id.*  The bankruptcy court issued an order summarily dismissing the motion for reconsideration as being without merit.  B.R. Dkt. 212.  This appeal followed.

Mallory lists the following issues for appeal:

1.    Did the Bankruptcy Court err in dismissing Mallory's bankruptcy with prejudice without compliance with 11 U.S.C. § 349?
2.    Did the bankruptcy court err in dismissing Mallory's bankruptcy based upon the Trustee's motion to dismiss?
3.    Did the bankruptcy court err in dismissing Mallory's bankruptcy without verification of the proof of claim relating to his mortgage?
4.    Does the submission of a proof of claim implicate threshold matters of subject matter jurisdiction and prudential interest that require determination prior to that of a motion to dismiss?
5.    Did the Trustee have an obligation to object to the proof of claim and amendments thereto relating to Mallory's mortgage?

---

[4]  Mallory, who was *pro se* during the hearing on the motion to dismiss, contends that one of the reasons the bankruptcy judge dismissed the case is "endless paperwork."  The bankruptcy judge did refer to "endless paperwork" during the hearing.  However, the endless paperwork comment was made in connection with Mallory's allegation that his previous lawyer was overburdened, not in connection with any burden on the court.  Mallory mentioned that he needed the court's "indulgence" because he believed he needed to obtain new counsel.  He stated that his other attorney had been "over-burdened."  The court replied that Mallory's previous attorney was "an excellent lawyer" and if Mallory's former lawyer "was over-burdened it was because of the adversary [proceeding], which is a different issue, and the endless paperwork." *Id.*  Then, the judge stated, "But the [delinquent] $19,000 is a critical part of this case."  *Id.*  The court's ruling clearly hinged on its concern about the overdue payments, not on the alleged "endless paperwork."

6.      Did the proof of claim and amendments thereto relating to Mallory's mortgage totally undermine his attempt at reorganization, requiring reversal of the bankruptcy court's dismissal order?

7.      Did the Trustee cause prejudice to Mallory by failing to address invalidity matters relating to the disputed proof of claim and amendments thereto?

8.      Are there equitable circumstances that justify reversal of the bankruptcy court's dismissal?

Mallory's arguments for reversal center around his claim that the bankruptcy court erred in dismissing his appeal because it did so without considering the "totality of circumstances." Namely, Mallory claims that the bankruptcy court should have addressed matters that he raised concerning the alleged invalidity of the amended proof of claim relating to his mortgage. Dkt. 9. Mallory alleges that Washington Mutual mishandled his mortgage account and loan payments and that Washington Mutual and other financial institutions that claimed to be owners of note failed to establish a chain of title.[5] *Id.* Mallory contends that it was improper for the Trustee to file a motion to dismiss rather than addressing the issues relating to the alleged invalid claims, and that it was improper for the court to dismiss his case before deciding whether the amended proof of claim was valid. *Id.* Moreover, Mallory argues that the bankruptcy court's dismissal *with prejudice*, which he claims is the "bankruptcy death penalty sanction," was "wholly unjustified" and that the court's prejudicial dismissal was based on "endless paperwork." *Id.*

The Chapter 13 Trustee asserts that the bankruptcy court was justified in dismissing Mallory's case because the bankruptcy court ordered Mallory to make all payments due to the Trustee, Mallory made no payments for three and a half months, and failing to make payments proposed in a plan is sufficient cause for dismissal under section 1307 of the Bankruptcy Code. Dkt.

---

[5] Mallory initiated a separated suit in state court against Washington Mutual on January 5, 2005. The allegations in this suit include violations of the Texas Deceptive Trade Practices Act, the Fair Debt Collection Practices Act, and the Real Estate Settlement Procedures Act. *See* Dkt. 9 (citing *Mallory v. Washington Mutual, N.A.*, *et al.*, No. 2005-00431, which was filed in the 189th District Court of Harris County).

22.   Additionally, the Chapter 13 Trustee asserts that Mallory's failure to abide by the Bankruptcy

Local Rules, which require debtors who are not wage or salaried employees to implement a form of

electronic transfer of funds to the Trustee for payment of plan payments, further justified the

dismissal.  *Id.*  The Trustee contends that Mallory did not seek relief from the requirement to make

payments while his claim was pending.  *Id.*  The Trustee argues that the court should not consider

Mallory's argument regarding the validity of the disputed proofs of claim because he did not raise

this issue during the April 20, 2010 hearing on the motion to dismiss.  *Id.*  Finally, the Trustee notes

that even if the prejudicial dismissal were inappropriate, it is a moot point now because more than

180 days has elapsed from the time that the case was dismissed, and the only effect of a prejudicial

dismissal is a bar on refiling a new case for 180 days.  *Id.*

## II. STANDARD OF REVIEW

A district court has jurisdiction over a bankruptcy appeal under 28 U.S.C. § 158(a)(1), and

in reviewing the findings of a bankruptcy court, a district court acts in an appellate capacity.  *See*

*Perry v. Dearing*, 345 F.3d 303, 308-09 (5th Cir. 2003).  The burden is on the appellant to show that

a finding of fact made by a bankruptcy court is clearly in error.[6]  *See Perry*, 345 F.3d at 309; *Butler*

*Aviation Int'l, Inc. v. Whyte*, 6 F.3d 1119, 1127–28 (5th Cir. 1993); *see also* FED. R. BANKR. P. 8013

("Findings of fact . . . shall not be set aside unless clearly erroneous . . . .").  A finding of fact is

clearly erroneous when, even in the presence of evidence to support it, the reviewing court is left

with a "definite and firm conviction" that the bankruptcy court has made an error.  *See Carol v.*

*Quinlivan*, 434 F.3d 314, 318 (5th Cir. 2005).  A bankruptcy court's conclusions of law are reviewed

---

[6]  The court notes that the bankruptcy court did not issue findings of fact and conclusions of law in her order dismissing
this case.  However, her statement during the hearing that the delinquent payments were a "critical part of this case,"
clearly demonstrates that she based her findings on this fact, which was not disputed.

5

*de novo.  See Perry*, 345 F.3d at 309; *Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 928 (5th Cir. 1999).

## III. ANALYSIS

The Trustee asserted several different grounds for dismissal in his motion to dismiss Mallory's case.  *See* B.R. Dkt. 198.  The bankruptcy court did not provide findings of fact or conclusions of law in its written orders of dismissal or its written order denying Mallory's motion for reconsideration.  So, the only record of the bases for her decision to dismiss the case is the transcript of the hearing on held on April 20, 2010.  The transcript establishes (1) that Mallory was more than $19,000.00 delinquent in making his payments to the Trustee; and (2) that the bankruptcy court considered the failure to make payments to the Trustee to be the central issue requiring dismissal.  *See* B.R. Dkt. 225 ("[T]he $19,000 is a critical part of this case.").  This court finds that the failure to make payments provides sufficient cause for the prejudicial dismissal so there is no need to remand for factual findings on the other issues.  The discussion below focuses solely on Mallory's failure to make payments to the Trustee.

### A.      Propriety of Dismissal:  Issue 2

Under section 1326(a)(1) of the Bankruptcy Code, "a debtor shall commence making payments not later than 30 days after the date of the filing of a plan."  Section 1307(c) of the Bankruptcy Code clearly states that a court "may" dismiss a case for "cause," and it delineates eleven specific situations in which cause exists.  The "[u]se of the word 'may' indicates that the decision to dismiss . . . is committed to the discretion of the bankruptcy court."  *In re Blaise*, 219 B.R. 946, 950 (B.A.P. 2d Cir. 1998); *see also In re Roberts*, 279 F.3d 91, 92 (1st Cir. 2002) ("An order allowing a motion to dismiss pursuant to Bankruptcy Code § 1307 is reviewed only for abuse of

6

discretion.).  Section 1307(c)(4) specifies that "failure to commence making timely payments under section 1326 of this title" is "cause" for dismissal.  11 U.S.C. § 1307(c)(4).  Courts considering situations in which a debtor commenced making payments but then either stopped or paid less than the plan required have considered the text of section 1307(c)(4) and concluded that a failure to *continue* making payments as required by the plan is cause for dismissal under section 1307(c).  *See In re Jenkins*, No. 09-36433-H3-13, 2010 WL 56003, at *2 (Bankr. S.D. Tex. Jan. 5, 2010) (finding cause for dismissal of a case in which the debtor commenced making the payments required in the proposed plan but paid an amount less than required); *In re Tashjian*, 72 B.R. 968, 972 (Bankr. E.D. Pa. 1987) ("[W]e assume that [section 1307(c)(4)] allows dismissal of Chapter 13 cases wherein the debtor not only never commences making any payments, but where he fails to continue to make such payments in regular fashion prior to confirmation.").  Here, Mallory does not dispute that he failed to make payments as required by the plan.  Thus, the bankruptcy court had discretion to dismiss Mallory's case because he did not make payments to the Trustee as required by the plan.

Bankruptcy Local Rule 1017-2 buttresses the court's conclusion that dismissal was appropriate under section 1307(c)(4).  Bankruptcy Local Rule 1017-2 states that Chapter 13 Trustees "may file motions to dismiss for non-payment, in the exercise of their discretion, at any time," and the rule dictates that "Chapter 13 Trustees *must* timely file motions to dismiss if the debtor is two monthly payments behind."  BLR 1017-2 (emphasis added).  Here, the Trustee, in accordance with this rule, filed a motion to dismiss when Mallory did not make the required payments.  Mallory had the opportunity to present his arguments to the bankruptcy court, and Mallory did not deny that he was more than $19,000.00 behind in payments.  The bankruptcy court therefore had cause to dismiss the case.

7

**B.      The "Totality of Circumstances": Issue 3**

Mallory claims that the bankruptcy court "did not take into consideration the overall circumstances" when it dismissed his case, including the fact that he had made "good faith payments" in the amount of $61,450.00 during the protracted pre-confirmation stage, which lasted more than 3 years. Dkt. 9 at 47. Mallory asserts that the bankruptcy court should have considered his arguments relating to the alleged invalidity of the proof of claim relating to his mortgage. Mallory admits that the proper process for resolving a contested matter in a bankruptcy proceeding is to file objections to the claims and file an adversarial proceeding, and Mallory filed both. Dkt. 9 at 46. He complains, however, that "he was required to treat the mortgage as allowed until [his other filings were] acted upon." *Id.* Mallory contends that the bankruptcy court "treated the payments as though a dispute did not exist." *Id.* Mallory argues that this was improper because the financial institution(s) seeking payment did not have standing. *Id.*

The Trustee argues that Mallory waived any argument relating to the alleged invalid payments because he did not raise it during the hearing on his motion to dismiss. Dkt. 22. Mallory did, however, raise this issue in his response to the Trustee's motion to dismiss. B.R. Dkt. 206. Thus, he presented the argument to the bankruptcy court, and it is not waived.

Regardless, the court need not consider the merits of Mallory's contention that the financial institutions that received payment from the Trustee did not have standing to assert their proofs of claim because it is not relevant to this appeal. If the bankruptcy court had overruled Mallory's objections to the proof of claim and that decision were on appeal, the court would address the matter. However, it is undisputed that Mallory unilaterally decided to stop making the payments to the Trustee due under the plan. *See* B.R. Dkt. 149 (Fourth Amended Chapter 13 Plan); B.R. Dkt. 198

8

(motion to dismiss, noting that Mallory did not make the payments); B.R. Dkt. 225 (transcript of dismissal hearing, during which Mallory admitted that he had not made payments). This was in direct violation of the Bankruptcy Code's requirements to make payments and the bankruptcy court's order to make payments. *See* 11 U.S.C. § 1326; Dkt. 6.[7] That is why the bankruptcy court dismissed his case, and it is the order dismissing the case that has been appealed.

Nevertheless, Mallory argues that the bankruptcy court should have considered his allegations regarding the validity of the proof of claim relating to his mortgage, as he discontinued his payments to the Trustee because the Trustee was dispensing funds to entities that did not have valid proofs of claim. Mallory cites *In re Durben*, *In re Tashjian*, *In re Junes*, and *In re Pizzullo* to support this contention. None of these cases is on point.

Mallory cites *In re Durben,* 70 B.R. 14 (Bankr. S.D. Ohio 1986), for the proposition that the "determination of materiality is a factual question within the discretion of the court based upon the totality of the circumstances." Dkt. 9 at 44. The *Durben* court referred to "materiality" because the issue in that case was whether the court could dismiss a case under section 1307(c)(6), which requires a "*material* default by the debtor with respect to a term of a *confirmed* plan." 11 U.S.C. § 1307(c)(6) (emphasis added); *Durben*, 70 B.R. at 15-16. The *Durben* court found that the default in the debtor's plan was not material and therefore did not constitute "cause" for dismissal. *Id.* at

---

[7] The court notes that Mallory did not designate docket entry 6 of the bankruptcy action as a document for the appellate record. However, Mallory did move to supplement the record on appeal with the entire bankruptcy record. Dkt. 6. The court initially denied this request as too broad, since Mallory did not specifically designate documents that needed to be added. *See* Dkt. 16. However, after reviewing the appellant brief and response thereto, the court finds that document 6 is relevant to this appeal and should have been designated initially. Thus, the court AMENDS its September 28, 2010 order granting in part and denying in part Mallory's motion to supplement to grant the motion (Dkt. 16) and hereby GRANTS the motion to supplement as it pertains to document 6. Admitting this document at this stage does not prejudice Mallory since (1) his motion to supplement requested that the court admit the entire bankruptcy record; and (2) he appears to have assumed that the court would grant the motion to supplement the record in his appellant's brief, which was filed before the court ruled on the motion to supplement the record.

16. Here, the reasons for dismissal are reflected in subsection (c)(4), not (c)(6).  Section 1307(c)(4), which deals with failure to make timely payments after the plan is filed but before confirmation of the plan, does not have a materiality requirement.

    *In re Pizzullo,* 33 B.R. 740 (Bankr. E.D. Pa. 1983)*, is not on point for the same reason. *Pizzullo* is about whether a mortgagee is entitled to a modification of the stay under section 362(d) of the Bankruptcy Code after a plan has already been confirmed if the debtor is not in material default.  *Pizzullo*, 33 B.R. at 741.  The *Pizzullo* court ultimately decided that "failure to make payments pursuant to a confirmed chapter 13 plan may constitute 'cause' to modify the stay," but "the facts of [that] case [did] not warrant any such modification."  *Id.* at 742.  Here, Mallory is appealing a *dismissal* of his case, not a modification of the stay, and the dismissal was due to a failure to make payments to the Trustee *prior* to confirmation of the plan.  The Bankruptcy Code specifically sets forth different standards for nonpayment prior to confirmation of a plan (§1307(c)(4)) and failure to make payments after confirmation of a plan (§1307 (c)(6)).  Subsection (c)(4) includes "failure to commence making timely payments under section 1326" as a "cause" for dismissal, and subsection (c)(6) specifically requires a "material default by the debtor with respect to a term of a confirmed plan" before a court may dismiss the case for failure to pay.

    Mallory cites *In re Tashjian*, 72 B.R. 968 (Bankr. E.D. Pa. 1987) to support his contention that "non-performance is not isolated from other circumstances as a basis to deprive a debtor's [sic.] of valuable tools with which the bankruptcy filing equips him or her."  Dkt. 9 at 44.  *Tashjian* is not on point.  The *Tashjian* court considered whether to grant relief from the automatic stay to a condominium unit owners' association after a check the debtor sent to the association for an "assurance of payment" was returned for insufficient funds.  *Tashjian*, 72 B.R. at 971.  The debtor

in *Tashjian*, unlike Mallory, was not behind on his payments to the *Trustee*. *Id.* at 971-72. Moreover, the *Tashjian* court specifically distinguished its case from a case in which the debtor was behind on his payments to the Trustee, stating that it assumed that section 1307(c) "allows dismissal of Chapter 13 cases wherein the debtor not only never commences making any payments, but where he fails to continue to make such payments in regular fashion prior to confirmation." *Id.* at 972.

Mallory next cites *In re Junes*, 76 B.R. 795 (Bankr. D. Or. 1987), which he contends supports his contention that a court may deny a request to dismiss or convert a case if "the failure to make the payments called for by the plan were [sic.] due to circumstances for which the debtor should not be held accountable." Dkt. 9 at 44. *Junes* is about whether payments on a claim by the IRS under a Chapter 13 plan are voluntary or involuntary and thus has nothing to do with the issues in this case. *Junes*, 76 B.R. at 797. Furthermore, even if *Junes* supported Mallory's contention relating to dismissal when failure to make plan payments was due to circumstances beyond the debtor's control, Mallory does not have a viable argument that he should not be held accountable for his failure to make plan payments. Assuming, *arguendo*, that Mallory's concerns regarding the chain of title were justified, it was still inappropriate for him to discontinue making payments to the Trustee in violation of the court's order. The appropriate path would have been to seek the court's assistance in the matter and to continue making the payments, as required, until the court ruled on the matter.[8]

---

[8] The court notes that Mallory did file a motion to expunge proof-of-claim 9-6 on December 24, 2009. B.R. Dkt. 176. In the motion, Mallory argued that JP Morgan could not establish itself as successor-in-interest to Washington Mutual and that it lacked standing to assert the claim. *Id.* After JP Morgan filed a response and a hearing was held, the bankruptcy court denied the motion to expunge without prejudice and ordered the bank to amend its claim within ten days. *See* Jan. 27, 2010 Docket Entry. On March 29, 2010, Mallory filed an objection to the amended proof of claim, again asserting his arguments relating to the ownership of the note. B.R. Dkt. 202. The hearing on the motion to dismiss occurred on April 20, 2010. The case was dismissed before Mallory's objections to the amended proof of claim were heard.

**C.      Standing as a Threshold Matter: Issue 4**

Mallory contends that the bankruptcy court erred in failing to address whether the claimants for the disputed proof of claim had standing before it took action on the Trustee's motion to dismiss, arguing that the Supreme Court has ruled that "standing 'is a threshold question in every federal case, determining the power of the court the entertain suit.'"  Dkt. 9 at 47 (quoting *Warth v. Seldin*, 422 U.S. 490, 95 S. Ct. 2197 (1975)).  Mallory, however, misapplies the Supreme Court precedent to which he refers.  In *Warth v. Seldin*, the Supreme Court explained that "standing imports justiciability: whether the *plaintiff* has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III."  422 U.S. at 498 (emphasis added).  "A federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action.'" *Id.* (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S. Ct. 1146 (1973)).  Here, there is no contention that the bankruptcy court lacked jurisdiction or that Mallory lacked standing to bring his bankruptcy claim.  Mallory, instead, contends that the *claimants* did not have standing to bring their claims.  If the bankruptcy court had overruled Mallory's objection to the proof of claim or had confirmed a plan requiring payment of claims to the improper payees without considering Mallory's arguments about the claimants' lack of standing, then Mallory's argument may have merit.  But the bankruptcy court did not rule on the claimants' claims—it simply dismissed the case.  Mallory has pointed the court to no authority, and the court is aware of none, that requires a bankruptcy court to rule on the merits of outstanding proofs of claim before dismissing a bankruptcy case for other reasons.

**D.      The Trustee's Duties: Issues 5 and 7**

Mallory also argues that the Trustee did not examine the proofs of claim and render assistance as required by 11 U.S.C. § 1302(b).  Section 1302(b) requires the Trustee to "advise, other than on legal matters, and assist the debtor in performance under the plan."  11 U.S.C. § 1302(b).  Mallory claims that the Trustee's "insistence of increased payments with respect to disputed claims is not equitable as no legitimate purpose is served by paying wrong parties," and the Trustee's failure "to examine the claim proofs or consider potential matters of claim facilitation or fraud is simply a breach of his statutory obligations."  Dkt. 9 at 49.  Mallory asserts that the Trustee disregarded a letter that Mallory sent regarding the ownership conflicts associated with the note, and that it was improper for the Trustee to seek dismissal in these circumstances.  *Id.*

First, the Trustee was *required*, under the Bankruptcy Local Rules, to seek dismissal when Mallory did not make the payments required by the plan.  *See* BLR 1017-2(10)(b).  Second, while the Trustee indeed has a duty to advise and assist Mallory regarding his performance under the plan, the Trustee must balance this duty with his other duties.  Under the United States Bankruptcy Court for the Southern District of Texa's Chapter 13 Trustee Procedures for Administration of Home Mortgage Payments, which the court adopted on September 29, 2005 and last amended on January 7, 2010, the debtor is required to make payments to the Trustee to correspond with the mortgage payment date.  U.S. Bankr. Ct. for the S. Dist. of Tex., Chapter 13 Tr. Procedures for Admin. of Home Mortg. Payments (Jan. 7, 2010), *available at* http://www.txs.uscourts.gov/bankruptcy/rulesformsproc/.  The Trustee is "authorized to disburse funds in payment of all regular contractual installment payments" required by the note, and these disbursements "should commence as soon as is practicable."  *Id.*  Here, the Trustee, in making the

13

mortgage payments, was complying with his obligations under the court's procedures.  The last paragraph of the procedures notes that they "may be varied in a particular case by *order of the Court.*"  *Id.* (emphasis added).  According to Mallory, when he attempted to discuss the issues relating to the ownership of the note with the Trustee, the Trustee informed him that nothing could be done without a hearing.  B.R. Dkt. 206.  This was the appropriate advice in light of the court's procedures.  If Mallory had continued to make payments until the court was able to address his objection to the proof of claim, then the case may never have been dismissed.  Mallory, however, despite the Trustee's advice that nothing could be done without a hearing, did not wait for a hearing.  His case was consequently dismissed because he failed to make the payments.  Thus, Mallory's claim that the Trustee failed to "advise, other than on legal matters, and assist the debtor in performance under the plan" under section 1302(b) has no merit.

### D.      Capital Punishment: Issue 1

Mallory contends that the bankruptcy court was not justified in dismissing his case *with prejudice*, which he deems to be the "bankruptcy death penalty sanction."  Dkt. 9 at 40.  When a bankruptcy case is dismissed with prejudice, it bars the debtor from refiling for bankruptcy for 180 days.  *See* 11 U.S.C.§§ 109(g), 349(a).  The Trustee argues that this appeal has been pending for more than 180 days, so any negative impact of the prejudicial dismissal is now moot.  The court agrees that Mallory's arguments regarding the impact of the prejudicial dismissal are now of no consequence.  Nevertheless, the court will consider the merits of his arguments.

Three provisions of the Bankruptcy Code are relevant to the court's analysis as to whether the bankruptcy court appropriately dismissed Mallory's appeal with prejudice: sections 105(a), 109(g), and 349(a).  Section 105(a) states:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or *appropriate to enforce or implement court orders or rules*, or to prevent an abuse of process.

11 U.S.C. § 105(a) (emphasis added).  Section 349 (a) states:

Unless the court, *for cause*, orders otherwise, this dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, *except as provided in section 109(g) of this title*.

11 U.S.C. § 349 (a) (emphasis added).  Thus, a dismissal is without prejudice unless the bankruptcy court has cause and orders otherwise, or unless the dismissal falls within section 109(g).  Section 109(g) states:

Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if–
(1) the case was dismissed by the court for *willful failure of the debtor to abide by orders of the court*, or to appear before the court in proper prosecution of the case; or
(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay.

11 U.S.C. § 109(g) (emphasis added).

Here, the bankruptcy judge ordered Mallory, in its Initial Order Outlining Debtors' Initial Responsibilities, to "make all payments due to the chapter 13 trustee."  B.R. Dkt. 6.  Mallory does not dispute that he did not make payments due to the Trustee under the plan.  Under section 105(a), the bankruptcy court had the ability to make any order that was appropriate for enforcing or implementing the court's orders or rules, and the judge could raise the issue *sua sponte*.  11 U.S.C. § 105(a).  Additionally, though section 349(a) would normally limit the judge to dismissing without prejudice, here, since Mallory admitted to willfully failing to make a plan payment as required by

15

the court and the court's rules, the bankruptcy court did not err in dismissing the case with prejudice pursuant to § 109(g).  11 U.S.C. §§ 109(g), 349(a); *see also In re Stathatos*, 163 B.R. 83, 87 (N.D. Tex. 1993) (noting that bankruptcy courts may dismiss a Chapter 13 case for cause and that the bankruptcy court has discretion to dismiss the case with prejudice).

Mallory also argues that the prejudicial dismissal infringed upon his due process rights because the Trustee did not move to dismiss the case with prejudice.  "[A] fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *In re Bleaufontaine, Inc.*, 634 F.2d 1383, 1387 (5th Cir. 1981).  "Some form of hearing must be accorded an individual before he is finally deprived of a property interest. . . . Nevertheless, '(i)n assessing what process is due . . ., substantial weight must be given to the good-faith judgments of the individuals charged by Congress with the administration of . . . programs that the procedures they have provided assure fair consideration of the . . . claims of individuals."  *Id.* at 1387-88 (citations omitted) (first alteration added).  In *In re Bleaufontaine, Inc.*, the Fifth Circuit determined that the good-faith judgment of a bankruptcy judge who had already heard the parties' bad faith allegations on numerous occasions and provided many opportunities for the parties to introduce evidence relevant to bad faith was entitled to substantial weight.  *Id.* at 1388 ("The bankruptcy court surely was not obligated to rehear contentions which had been considered earlier at a hearing where the appellants were accorded due process.").  Here, like the parties in *Bleaufontaine*, Mallory had ample opportunity to raise his arguments against dismissal, and he in fact did so in his response to the Trustee's motion to dismiss.  He may have been unaware when he was filing his response and making his arguments at the hearing that he was defending against a dismissal *with prejudice* as

16

opposed to a dismissal without prejudice, but he had every opportunity to make his arguments against dismissal.  His due process rights have not been infringed.

### E.      Equitable Considerations: Issues 6 and 8

Mallory argues that, given the remedial purpose of bankruptcy law, the court should reverse the bankruptcy court's dismissal, which allegedly totally undermined his attempt at reorganization. Dkt. 9 at 37.  Mallory fails to take into account his own role.  At the time of dismissal, Mallory had a pending adversary proceeding relating to the chain of title issue.  The bankruptcy court specifically noted, seven days before the hearing on the motion to dismiss, that the adversary proceeding would move forward to trial.  *See* B.R. Dkt., Apr. 13, 2010 Courtroom Minutes.  There was also an objection to the amended proof of claim relating to Mallory's mortgage on file, which Mallory filed less than three weeks before the case was dismissed.  B.R. Dkt. 202.  His concerns relating to the proofs of claim certainly would have been addressed shortly if the case had not been dismissed for other reasons. Mallory could have filed a motion for relief from the payments while these issues were pending.  However, he did not seek relief from the payments; instead, he just stopped making them. If he had continued making payments until the court ordered otherwise, then these issues would have been addressed in the natural progression of the case.  Thus, it is not the dismissal that undermined Mallory's attempt at reorganization, it was his failure to follow the rules.

Mallory's final argument is that, as a court of equity, the bankruptcy court should have addressed the issues of standing, claim validity, or apparent fraud and claim facilitation before dismissing his case. Dkt. 9 at 49-50.  Courts of equity, however, are required to *balance* the equities. Mallory completely disregarded the court's order to make payments to the Trustee, and, in stopping his payments, took justice into his own hands.  Allowing Mallory to speed up the court's

consideration of his latest objection to the proof of claim by blatantly disregarding the court's order and procedures would be inequitable.

### IV. Conclusion

The bankruptcy court's order dismissing Mallory's case with prejudice is AFFIRMED.  The stay the court entered on October 28, 2010 is LIFTED, and JP Morgan Chase's motion to lift the stay is DENIED AS MOOT.

It is so ORDERED.

Signed at Houston, Texas on February 2, 2011.

Gray H. Miller
United States District Judge